Good morning, and may it please the Court. My name is Jesse Ritchie, and I'm appearing on behalf of Mr. Briggs. Good morning. I would like to preserve two minutes of time, if possible. I would like to start today by addressing the jurisdictional question that the Court lacks jurisdiction to decide the attorney's fees issue. So as a result of that, we will withdraw that argument. And then to address the other argument that the Court presented at issue, the issue of whether or not the jury instruction was an error. We believe the jury instruction was an error here. The Court's precedent in Cato v. Russian outlines the standard for determining whether or not a disciplinary decision violated the due process, and that is it has to be supported by some evidence. But in that case, the Court makes sure to outline that that evidence must have here that says there must be some indicia of reliability of the information that forms the basis for the disciplinary action. Well, I did a lot of jury work both as a lawyer when I did 70 jury trials as a lawyer, and then I was a trial judge. And I have a question because isn't reliability of evidence always an issue at trial? That they're not going to convict someone to — some evidence, to me, is the standard of review. That's what you have to show in order to prevail. But a jury isn't going to — isn't it just encapsulated in it that it would have to be reliable? They're not going to fine for anyone if the evidence isn't reliable. Your Honor, I think the issue here is that when the jury is instructed that you only need to have some evidence in the record, what the jury will do is the jury will look at — they're going to do what they're instructed to do, and they will look and see whether or not there is absolutely any evidence in the record. And if there's any evidence in the record, that's the end of their analysis. They can be done. But when you instruct them that that evidence has to have some indicia of reliability, what they will then do is they will say — they will do that secondary analysis of saying, yes, there is some evidence in the record, but now we need to evaluate it and determine whether or not that evidence had any indicia of reliability. And I think, for example, the — Well, let me ask you this. The way the jury — the way they were instructed, you wanted it to have some reliable evidence as to some evidence. Under the instruction that the district court gave, were you able to — I'm not sure. Were you pro bono counsel at trial? No, Your Honor. I am only pro bono counsel for the appeal. There was a different lawyer at counsel. But wasn't counsel allowed to argue that the evidence was unreliable and thus inadequate to support a disciplinary action? I believe the counsel could have made that argument at trial. But the issue with that is then you're arguing against the judge's instructions, essentially, where then you're trying to infuse an additional standard, an additional element into what the judge has already instructed. Here the judge instructed and said, you are only to find — you know, essentially, if you find that the disciplinary hearing, the disciplinary action was supported by some evidence, then you are to find for the county. So counsel would have then had to come up and say, well, yes, the judge instructed you that if you find some evidence in the record, but I'm going to tell you that on top of that, you have to make — you have to find that it is also — has some indicia of reliability or is reliable. Kagan. Why wasn't any error here harmless? You have both Wallisler and Slingstad saying that they watched the video. And from watching the video — why can't video evidence be some evidence with reliability? Well, I think the issue here is that both Wallisler and Slingstad watched the video, but the video is absolutely — it doesn't have any sound whatsoever. So they're watching a video with no sound and then coming to the conclusion of, well, Mr. Briggs was provocative here, and he was — he was starting the fight. He saw the physical language, didn't he, or something? Didn't he throw some food or something like that? I believe that was in another issue, and I'm not completely sure whether or not the video showed him throwing the food. But really, one of the issues here is there were three incidents, there were three fights that were — that occurred. One of them was based off of a situation where Mr. Briggs — the inmate in that situation, Tommy Steele, said Mr. Briggs was being provocative and saying statements to him. So he went over and punched him. Then there was a food fighting incident. Then there was a third incident with a — Mr. Smith. And — But the video — but the video shows, at least according to Wallisler, that Mr. Steele is minding his own business, and it's Mr. Briggs, your client, that's coming to him and engaging. So that is something that you could actually visually see without sound, correct? I think in one of the incidents that could have occurred, but then you still have to have the determination of, for all of the other incidents, was the — was the video evidence enough? And there are situations where they're making arguments that, you know, that — that audio would have been essential. And I believe in the situation of Mr. Steele — I believe it was because the stories underlying the videos would have needed additional cooperation. And that cooperation — cooperation, my apologies, came in the form of Mr. Steele's self-serving testimony, when Mr. Steele said to the officers, this is what happened. And they based — they based their interpretation of the video on that self-serving  But what authority do you cite that you not only need a video, but you need corroborating testimony? I don't believe — What defines some reliable evidence in that way? I don't believe there's any case on point, but I think that goes back to why it's so important to instruct the jury that there needs to be some reliable evidence so that they can make that — So why isn't this just a weighing of the evidence? It sounds like you're arguing that the jurors should have weighed the evidence differently. They had a video. It didn't have sound. They had testimony from the officers or from Mr. Steele. They had Mr. Briggs denying — or acknowledging he was shown in the video, but, you know, denying the events. It sounds like a pretty factual issue for the jurors to decide and decide if there's evidence. And I agree with Judge Callahan. It's encapsulated in the — in the weighing of the evidence, whether you consider it reliable or whether you reject it. So, I mean, to me, it just seems to me you're arguing the facts, and that's what the jury decided. I agree. I do believe the jury is — they're the ultimate arbiter of the facts. They get to decide the situation. But what they need to do is they need to do that based off of the judge's instructions here. And because the judge instructed them as to — that they only needed to have some evidence in the record and that there was no instruction that the evidence needed to be reliable, they could have based their decision on anything. And they never made that reliability determination in the first instance. So if somebody testified and the jurors concluded that the person wasn't credible, they just didn't believe them, that would be some evidence, but they'd reject it. So it seems that they would be doing what you're requesting through this instruction just in their role as jurors in weighing the evidence. I believe that the jury — the jury is instructed specifically that they're the ones who get to review the testimony and make the determination as to credibility of witnesses in that — in this instance. But I think the ultimate issue here is that what we're asking the jury to do is to look at the record and decide whether or not there's some evidence to support the disciplinary decision. And without doing that secondary analysis, then we can't be sure what they base that on. If they base that off of the fact that evidence was admitted in the first place, the very fact that there is any evidence in the record would mean that they would have to support that decision under this instruction. Well, let me give you the hypothetical. If the sergeant in this case testified that he was psychic and knew that Briggs had instigated the altercations because he had read Briggs's mind, would your position be that the testimony would meet the some-evidence standard, even though it's not reliable? I believe — I would object to that question after the trial, and I would hope it would be sustained. But if it were not, then I believe under this instruction, the jury could say there's some evidence in the record that says — that supports the disciplinary decision, and we need to follow the judge's instruction here and affirm that disciplinary decision. But they also get credibility. They do a credibility determination, yes. And so wouldn't that keep them from going with the — I imagine that — I know that Briggs instigated. Doing the old Johnny Carson? Yes, exactly. The great Carsonian. Ideally, they should do that. But I think that when you're looking — in most situations, I would agree with that. But I think the problem here is that we have conflicting instructions. We're both instructing them. You look at the evidence, look at the testimony, weigh the credibility of the person. But also, if there's any evidence in the record, some evidence in the record, no matter how small, you need to affirm the disciplinary decision. And I believe if that testimony got in, the jury could say, well, I don't think it's credible, but it's evidence. It's some evidence, because we're also instructed that testimony is evidence. But they're also instructed to weigh the evidence. They can accept it. They can reject it. They can accept it in part. They're told all of those things in the standard instructions. Yes, Your Honor. And I would say, in most instances, a preponderance of the evidence standard would protect against that type of issue. But because this is not the preponderance of the evidence standard, which is something that the county emphasized during its closing argument, that this is such a low standard that they don't even have to meet that — Well, I'm sure, though, I'm probably going to ask the other side, and they're going to get up, and they're going to say, it wasn't only some evidence, it was overwhelming evidence. So what's your response to that? Or do you want to hear what they say the overwhelming evidence was before you respond? What I would say is that at the — this Court presumes that if an instruction is erroneous, that there is — that there was prejudice. And here, because they emphasize the low, low standard that the some evidence standard is, that is prejudicial. And we can't be sure what — Well, I don't — no, I don't think — I don't think that's a correct statement of the law. If reliability is an element, then you get closer to that. But reliability — but just because there's something wrong with an instruction, I'm not sure that it can't be overcome. I think in this — I base that statement on Clem v. Lamelli. And I think what the issue here is that if reliability is an element, if the jury needed to be instructed that the evidence had to have some indicia of reliability, then I do believe that would have been an erroneous instruction, and then the presumption would attach. But if the Court finds that it's — it's an element that doesn't need to be stated or is not necessary, then it would not need to be. Do you want to save your time for a rebuttal? Can I ask a question, please? Oh, go ahead. I don't hear you today advocating the objective reasonableness test that's in your briefing. Are you withdrawing that as well, or — No, Your Honor. We — I just wanted to address the specific issues that the Court pointed out in its order issue. And I think that under the — Was that an argument in the alternative, if you don't prevail on the Cato some reasonable evidence standard? Yes, Your Honor. Okay. I think that under the — under the Supreme Court's precedent in Kingsley that they have created a distinction between pretrial detainees and prisoners, and I think that distinction goes all the way back to Superintendent V. Hill. But Cato is a prisoner case, and you are relying on that. Yes. So that seems to be intention, correct? Yes, Your Honor. It's an alternative argument. If the Court finds that the Cato standard doesn't apply, we would argue that. Under Kingsley, it's a different test for pretrial detainees. Would you like to save the rest of your time? Yes, Your Honor. Thank you. Thank you. Good morning. I'm assuming you're not splitting argument even though you have someone else at the table. We would never do that. It's all for me. Okay. No we will not. I will be arguing the whole thing. All right. Go ahead. May it please the Court. My name is Morgan Serena. I'm an attorney representing the county in this appeal and also one of the trial attorneys who tried the case with Mr. Stacey, who's also present. I'd like to first, and I guess maybe primarily, address the jury instruction issue that is before the Court. As the Court has correctly pointed out in many of its questions to Mr. Briggs' counsel, the jury was instructed in this case on many, many, many different things, including the weighing of evidence and the credibility of witnesses. It is the county's position that the some evidence standard was correctly given to the jury in this case, and even if it was not correctly given and the word reliable should have been inserted in there, which I don't believe is the correct standard, there was no error because the jury was instructed on many, many, many different things about weighing of credibility of witnesses, weighing of evidence, and reliability is of course something that they would have considered, and if evidence had been unreliable they would have rejected it. But if we get into, let's just hypothetically assume that we either, that we find error, why would this be harmless from your perspective? For a variety of reasons. First, the jury, well, I'll start with this, and the reason I'm struggling is because something kind of came to me yesterday in looking at the cases regarding the some evidence standard, and it dawned on me that I'm not entirely sure that the claim, the finding of guilt and challenging that finding of guilt and the some evidence standard is something that should have even gone to a jury trial. If you look at all of the cases involving the some evidence standard, they all go up for judicial review, the challenging of a guilty finding in a disciplinary context. They all go up by an inmate or a pretrial detainee on a writ of habeas. They somehow make their way through the court system on an appeal, and it is, the some evidence standard is strictly a standard for judicial review. And for whatever reason, we ended up trying this issue in front of a jury. But it's a 1983, so. It is a 1983. You are correct. But that ship has sailed. It has. It has, but, and I'll bring it around for you, and why I believe one of the reasons it was harmless error is because of that. Because typically, if an inmate did challenge the sufficiency of a guilty finding and go up on judicial review, then the court, whichever court it was, and let's just say the district court in this case, the Montana district court, would have applied the some evidence standard, which is highly, highly deferential. And would not have weighed any of the credibility of the witnesses, would not have looked at or weighed the evidence, would have just looked at what evidence was in the record, and would have applied the some evidence deferential standard, giving all or a lot of deference to the prison officials. In our case, Mr. Briggs got a five-day jury trial in front of a jury. And the jury was allowed to listen to his testimony, the testimony of all witnesses that he called at trial. Mr. Briggs ---- Let me ask you on the harmless error point. This was your closing argument or perhaps your co-counsel's. This is a quote. The instruction that the court has given you, it says, quote, some evidence, end quote, quote, some evidence, end quote. It doesn't. We don't have to conduct these hearings and prove guilt beyond a reasonable doubt in a disciplinary hearing. We don't need to even prove it by a preponderance of the evidence, which is the standard imposed on them in this case. It just has to be some evidence. I respectfully submit to you in February there was some evidence that he incited this and participated in it. Number five, did we violate his due process rights in April by finding him guilty of fighting? The jury instruction says all we have to do is have some evidence, just some evidence. You'll see it. It's one of the instructions. It's very clear and don't lose track, quote, some evidence, end quote, not beyond a reasonable doubt or by a preponderance. So clearly at trial you felt it was very important or I'm saying you, counsel, found that this standard was extremely important in whether you prevailed or not. So why shouldn't we find it, if we disagree with you, that the standard should be some reliable evidence and not just some evidence? Why how can we find harmless error when it was so critical to your closing argument to the jury? Well, I will also point out to the Court that that closing argument statement is absolutely correct. That was made at the time of trial, as was additional arguments, one of which is in Volume V of the transcript, page 1234, where it was argued to the jury. You'll have a set of jury instructions or more with numbers on them, and then it goes on to say, you get to come here and judge the credibility of witnesses. You get to decide whether a witness is truthful, lying, mistaken. You may recall an instruction the Court gave you, which essentially says that you can believe a witness completely. You can disbelieve a witness. You can believe it in part. If somebody gets up and says the wrong date by mistake, that's just an innocent mistake. So you're saying the some-reliable-evidence standard, the reliable means nothing, because we can just rely on preliminary jury instructions and final jury instructions that are in the preliminary sections of the model jury instructions, and that just satisfies it. It's a superfluous word, reliable, right? It sounds like that's your position. I wouldn't say that it was a superfluous word. I would say it's implicit in the rest of the jury instructions. So then it never needs to be stated, right? It never needs to be explicit if it's always implicit. Well, it never — it doesn't — it's not the standard that you would give to a jury. And it isn't the standard that was given to the jury in this case. And the some-evidence standard that was given to the jury in this case was correct. And implicit in the jury's weighing of the evidence and weighing of the credibility of witnesses and coming to a decision, the jury looks for reliable versus unreliable evidence. So what was Mr. Briggs supposed to do? Was he supposed to show there's zero evidence, or he's supposed to attack the reliability of Wallisler and Slingstadt? Is he just supposed to attack what you said, the credibility of the government's witnesses, or is he supposed to show there's not some evidence, there's zero evidence? Because those are different questions, right? Right. In — in the cases, so in Hill and Cato and Meeks, the — the idea — or the — what the — the inmate has to do is show that the some evidence, you know, any evidence, which is the standard, was actually unreliable evidence. And they do so by challenging that evidence. So, for example, in the Cato case, the only evidence that met the some-evidence standard in that case for supporting a finding of guilt was information from a confidential informant, hearsay test — or hearsay statements and information gathered from confidential informants that those informants had no actual personal knowledge of. And the inmate challenged that evidence and said, because it is so unreliable, it is not some.  But what jury instruction did the court in this case give to the jury that says, this is how you understand some evidence? It's not zero evidence versus something. It's reliable versus not. Because it sounds like you're saying, oh, the jury would have understood. They're supposed to inherently make a reliability determination based on this instruction. There was no — And how were they to know that? If someone just told me, it depends on whether there's something or nothing, then I don't think I would inherently understand that that something means, oh, I have to make a reliability determination. And you are right. There is no instruction that was given to the jury to advise them or instruct them on how you weigh or decide reliability and how reliability relates to some evidence versus some reliable evidence. I mean, those instructions weren't given. It was a some evidence standard given to the jury. It was the instruction that said, you know, this is a minimally stringent standard. You are not to reweigh the evidence and the credibility, which then again — I mean, then we have kind of a problem because we're telling them to weigh the credibility of witnesses as well. But there is no error in the case because — Wait, I'm sorry. You're saying they were instructed not to weigh credibility, that they were told just to determine if there's some evidence versus zero evidence? They were instructed that there had to be some evidence to support the finding of guilt, that the disciplinary board had to rely on some evidence. And that evidence — But that they were told not to weigh credibility of witnesses? That would actually be a different problem, correct? Well, the instruction, and I'll find it for you, is F-20. It says, this due process requires a disciplinary hearing decision must be supported by some evidence in the record. Whether this standard is satisfied does not require examination of the entire record or independent assessment of the credibility of the witnesses or weighing of the evidence. This standard is minimally stringent and is satisfied if there is some evidence in the record that supports the conclusion reached. But doesn't that just contradict everything you kept saying, that implicit, the jury was instructed that they had to determine the reliability and credibility of witnesses, and they're specifically being told, don't make a credibility assessment? Well, and that is why I sort of started the argument with, I'm not entirely sure that the jury was — I think that the claim of challenging the sufficiency of guilt was meant to go up on appeal for judicial review rather than to a jury of fact-finders. However, Mr. Briggs did have a jury trial. He did have a full five days of jury trial. And Mr. Briggs is the one who put forth this evidence in his case-in-chief. Mr. Briggs is the one who presented the video surveillance footage to the jury. And he argued to the jury, look at this footage. It is so reliable that it supports my argument. It supports my claim in this case. Fine for me. He was able to call witnesses — So what should we do with the fact that it sounds like the judge gave conflicting jury instructions to the jury? On the one hand, they gave, I assume, the Ninth Circuit model jury instruction on credibility of witnesses. On the other hand, they gave a substantive jury instruction that said, don't weigh the credibility of the witnesses. Well, the credibility of witnesses, or the sum evidence standard, was limited solely to the challenge to the April 2015 finding of guilt at the disciplinary level. It didn't apply to any of the other claims that Mr. Briggs brought. And in the special verdict form, the jury was asked — So we're required by law to presume the jury followed the jury instructions. Which jury instruction should we assume they followed? The one that says make a credibility assessment, or the one that says do not make a credibility assessment? Well, so again, they would have followed all of — we have to assume they followed all of them. But this — Okay. But how do you follow one that says make a credibility assessment and the other one that says do not make? How do you follow that? Well, and again, so Instruction F-20, which we're discussing here today that goes over the sum evidence standard, would have only been applicable to the one claim brought by Mr. Briggs challenging the sufficiency of his guilty finding in an April of 2015 hearing. There were a variety of other claims brought by Mr. Briggs. The special verdict form had —  But that is the claim that we're looking at right now, right? That is the subject of this appeal. Right. So I don't even think we need to talk about other claims. Let's just talk about the one claim that's the subject of this appeal. The jury was given conflicting instructions about whether they should assess the credibility of witnesses, correct? They were — in that one claim, they were told that the evidence or the standard that they had to review for that particular claim was some evidence and that they — that it is minimally stringent and it is satisfied if there is some evidence in the record that supports the conclusion. It — they were advised it does not require examination of the entire record or independent assessment, but they were also advised that they should assess witness credibility and weigh evidence. So they weren't — Not for that claim, for the other claims that are not the subject of this appeal, correct? All of the other instructions also applied to all of the claims. So when you read Instruction F-20 — and I — and I completely understand the Court's question because I, too — that's sort of how I came to this realization yesterday that this claim maybe wasn't supposed to be in front of a jury, but we gave Mr. Briggs a five-day jury trial on it in any event. But the jury Instruction F-20 says that this does not — this standard, the some evidence standard, does not require examination of the entire record or independent assessment of the credibility, but then they were advised that they should, and — and we argued — So I guess — anyway, I won't waste any more time on this. No, and I — I completely understand. I guess my position would be that we did, in fact, urge the jury in closing and throughout the trial to rely upon their own weighing of the evidence to weigh the credibility of the — No, you didn't. I just read you the jury — your closing argument. If the — if that jury instruction said some evidence means do not assess the credibility of witnesses, and counsel for the government kept saying some evidence, some evidence — I mean, I'm quoting some evidence three times in quotes. Look at that jury instruction. It's just some evidence. You were not telling them in closing to weigh the reliability of evidence. If you did, you would be telling them contrary to the jury instructions. Well, I — I get it, and I will just point out that the remaining portion of the — the closing argument that I did — I'm going to give you a little extra time, because I would like you to assume error and tell me why there was some evidence, why it would be harmless. I would like you to tell me why it would be harmless. In this case, Mr. Briggs was afforded a five-day-long jury trial with dozens of witnesses and video — the video surveillance footage showing the — the sort of the incident — I'll call it the incident with inmate Smith in April of 2015, which admittedly, neither Mr. Briggs nor the county actually briefed the factual background of that incident for the court, so the court may be at a disadvantage in knowing those facts. But that video surveillance footage was played by Mr. Briggs to the jury. They watched it. Mr. Briggs called witnesses to talk about that footage.  The incident where Mr. Smith was involved is not the subject of this appeal, correct? This appeal just concerns Steele, correct? And again — So we don't need to look at the evidence of other claims involving incidents with other inmates that they're not the subject of this appeal, correct? I don't know how that shows harmless error with regard to the incidents involving Steele. And so to answer that question, and I am not trying to say that the court is wrong, what I will say is that we, as the parties, were wrong in our briefing. We, as the parties, we briefed the factual background related to a February 2015 incident involving Mr. Smith — or Mr. Steele, I apologize — involving some food throwing and things like that. At the time of trial, Mr. Briggs did not challenge the sufficiency of a guilty finding at the disciplinary level for the February 2015 incident with Mr. Steele. He only challenged a separate incident in April of 2015 involving an inmate named Mr. Smith. And we, as the parties, made an error in our briefing. We briefed the factual background related to the February 2015 incident with Mr. Steele and omitted the factual background of the April 2015 incident with Mr. Smith. But the special verdict form, which is — I have the citation to it in the record. So what was the jury evaluating for some evidence? The same things as what they evaluated in February of 2015. So — The Steele — was it the Steele or the Smith incident? The Smith incident, which had the same evidentiary support that the disciplinary board relied upon as February with Mr. Steele. So video surveillance footage, which Mr. Briggs presented to the jury and testified about. Reports related to the incident that was involved in the video surveillance footage. Interviews that were conducted by the disciplinary board or the officers who interviewed Mr. Smith and Mr. Briggs about what the video surveillance footage showed, as well as the officers' experience and their own, you know, background in having run a jail, which contributed to how they interpreted that video surveillance. All of that is evidence that before the disciplinary board relied upon when they found Mr. Briggs guilty in April of 2015 of fighting, and then was represented at trial to the jury for them to consider whether or not there was some evidence to support the finding of guilt for fighting. The jury saw — I have just looked through your entire answering brief. I don't see Smith mentioned once. And that is absolutely correct. I only see Steele. I'm hearing this for the first time. Anything about Smith? So you're saying your entire answering brief is wrong? It's briefing the wrong incidents involving the wrong alleged victim? Only the factual background. So the factual background in both the opening brief and the opposition brief, our answer brief, only discusses a February 2015 incident with Mr. Steele. That was an error. I fully take responsibility for that. I looked at the opening brief, saw it discussed February of 2015, and responded accordingly. It was an error. We — the only thing at trial that was — that the jury had to decide upon, that the some evidence standard would have applied to, was an April of 2015 incident, which — So I'm also looking at your answering brief. I don't see any harmless error analysis in here. There is definitely a harmless error analysis. I believe it's towards the end of our argument. I'll find the page number for you. And if it's in here, it's involving the wrong victim and the wrong incidents. But the — That's your position today, correct? It's involving Steele, but you should be arguing Smith. Well, the same would be true of the opening brief by the appellant, that his argument regarding the wrong jury instruction, the wrong evidence, the unreliability of the evidence — Actually, why don't you go ahead and point me to the pages where you think it addresses harmless error? Because I didn't see it, but perhaps I missed it.  I apologize. I believe it's on page 22, beginning on page 22. The last paragraph, there is no evidence presented or argument made by Briggs that the jury instruction regarding some evidence — Okay. So further, there's no evidence presented or argument made by Briggs that the jury instruction regarding some evidence presented him or harmed him in any way, or that the jury would not have found exactly as it did, irrespective of the jury instruction. And then I believe it goes on — Affirmative harmless error case.  I mean, I can read this whole paragraph if you want. Briggs argues that because counsel for Gallatin County discussed the standard during closing argument, he was harmed. Of course, closing argument is not evidence for the jury to consider, and there was a jury instruction detailing that given to the jury in this case, instruction number F-4, which we've just gone over. Briggs cannot genuinely argue the jury was persuaded solely by the very brief discussion of the some evidence standard made by counsel during closing argument when they were also instructed that closing argument is not evidence they can rely upon when deciding facts in the case. Are there other parts of your brief that you can point me to that are your harmless error argument, or is this it? Well, it proceeds through the rest of page 23, page 24. Okay. But I see nothing that says you're — I mean, I could read this all, but I'm not going to waste time here. But it just goes on about the jury would have performed the same analysis of the same evidence, weighed the credibility of the same witnesses, and returned with the same verdict. As we know, the credibility is kind of in question. Injecting the word reliable into the instruction would have made no difference, especially when the jurors were provided with a number of other instructions. You know, it just — it just keeps going. So I just don't see an affirmative — it seems more like this is argument, and I don't see — I mean, you agree with me, though, that under Clem v. Lomely, the burden shifts to the defendant to demonstrate harmless error, right, if we find there's an error in the jury instructions. If there is — I just don't see your affirmative case of here's the evidence that we had. Everything is like Briggs had every opportunity to challenge the reliability. Briggs had the opportunity to challenge each witness's credibility. Briggs had the opportunity to present his own testimony. I mean, I'm just going through all of 24. 25 is the same. Well, I guess — I guess I — I do see that as a harmless error argument. It may not be the best one you could have made, but it does appear when you say that there would not have been a different result, that is a harmless error argument, I think. So maybe we disagree on that point. And our argument, just to reiterate for the Court so that there's clarity on that issue, our argument is that there would be — if you assume error, which our position is there's no error, the standard in every case is some evidence.  But so — If you assume error, it was harmless because the jury instructions are read as a whole. There is a site in our — in our brief on page 24, as well as the Dang case that this Court provided in its order prior to oral argument, that says you take the jury instructions as a whole to determine whether or not there was error. So as a whole, the jury instructions read together would have created no error in this case, even if reliable needed to be inserted, because the jury was advised, you know, throughout the jury instructions that they needed to weigh credibility, they needed to look at the evidence, and it would be implicit that they would reject unreliable evidence, as well as the — Mr. Briggs was the one who presented this evidence in his case in chief and argued to the jury that they should rely on it. It wasn't the county in its defense that presented video surveillance footage. It was Mr. Briggs. He presented it. He made and offered testimony on his own behalf about what that video surveillance showed, and he argued to the jury that the video, in essence, was so reliable, it supported his claim. And then, if there were arguments —  I think we're kind of treading over the same material. So unless any of my colleagues — and we've taken you way over time — have additional questions. No, thank you. All right. Thank you. Thank you so much. It was lovely to argue in front of you. So thank you. All right. I'm going to put three minutes on your clock for rebuttal, and since we went significantly over, we'll see what other questions we have. Thank you, Your Honor. I just would like to point out one thing. Under the jury instruction, as given your hypothetical situation about a disciplinary board and saying, my, you know, ESP tells me that this person did it, if the disciplinary board accepts that under this jury instruction, the jury has to find that there was some evidence to support that decision. And that's — that's erroneous, that based off that instruction alone, there is no way that a prisoner could ever win, because as long as there is any evidence, as long as the disciplinary board decided anything — Well, your client did actually win. He got two cents. That's what they awarded him. I'm not sure what the two cents was for, but that was his damages. Yes, Your Honor. He won under a — under the claim that the board erred in not giving him factual findings in their written decision. So he won under a procedural ground, which — which I'm glad he won that one. But as far as the jury instruction went, if there was some evidence in the record, he — he loses everything, no matter how flimsy the evidence is. And I did want to point out in the Cato case, the Court actually looks at two things. So they look at the evidence related to a confidential informant, but they also look at polygraph evidence, and they say that's not reliable either. So under — again, under this instruction, under the Cato case, the jury would have been forced to look at it and say, well, there was a polygraph test. And they based it off of the polygraph test. And that's some evidence. So we have to affirm this decision from them. So under — under — just under this test, this Court's precedent under Cato, under Powell, under everything, it somewhat makes the — some indicia of reliability standard moot, because as long as the disciplinary board at the lower level accepted that there was some evidence, no matter how — if they found it was reliable, no matter what they accepted, then the jury — the jury's decision is set. The jury does not get to make a decision — a different decision under this jury instruction that they faced. And if there are no questions, I will — Thank you both for your argument. And I — we obviously appreciate everyone that appears before the Court. But in situations where people take pro bono assignments, I always like to indicate that that is helpful to the Court. And we do appreciate attorneys giving their pro bono time so that issues can be best briefed before the Court. Thank you both for your arguments. This matter will stand submitted.
judges: CALLAHAN, BADE, KOH